UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/13/07

------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                                       Plaintiff,

-against-

MITCHELL S. DRUCKER AND RONALD DRUCKER,
                                       Defendants.

WILLIAM V. MINERVA,
                                       Relief Defendant.

ECF CASE

06 Civ. 1644 (CM)

------------------------------------------------------------------x

### DECISION AND ORDER DENYING DEFENDANTS' AND RELIEF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

On March 2, 2006, the Securities and Exchange Commission (SEC) filed the instant complaint alleging, <u>inter alia</u>, violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against defendants Mitchell S. Drucker ("Drucker") and Ronald Drucker ("R. Drucker") (collectively,"Defendants"). (Compl. ¶ 8.)

On December 18, 2006, Defendants, and Relief Defendant William V. Minerva ("Minerva" or "Relief Defendant") collectively moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there was no credible evidence that Drucker possessed any material inside information at the time of the trades alleged in the

1

Complaint. On January 17, 2007, the SEC filed its opposition memorandum and argued that a key witness as well as other circumstantial evidence put Drucker in possession of inside information at the time alleged in the Complaint. On January 24, 2007, Defendants and Relief Defendant filed their reply and reiterated their timing argument.

For the reasons set forth below, the motion for summary judgment by Defendants and Relief Defendant is denied.

I.  **Facts**

Except as otherwise noted, the following facts are undisputed.

From approximately January 2000 to April 2002, Drucker was Associate General Counsel of NBTY, Inc., a manufacturer, marketer, and retailer of nutritional supplements. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶¶ 1, 5; Compl. ¶¶ 12, 15.) He reported to the Chief Financial Officer of NBTY, Harvey Kamil ("Kamil"), and as part of his normal responsibilities, occasionally assisted with the preparation of certain company press releases. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 14; Compl. ¶ 16; Answer ¶ 16.) Michael Duban ("Duban"), General Counsel of NBTY, also occasionally assisted with the preparation of certain company press releases. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 14; Drucker Aff. ¶ 11.)

Between November 2000 and March 2001, Drucker purchased 36,200 NBTY shares through his American Express brokerage account, and 5,000 shares through his father's (R. Drucker's) Vanguard brokerage account. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶¶ 50-51; Drucker Aff. ¶ 43; see also Expert Report of Edward S. O'Neal 17.) Drucker also purchased 3,025 NBTY shares between February 15 and March 16, 2001 on behalf of Minerva through

Minerva's online Quick and Reilly brokerage account. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 52; Drucker Aff. ¶ 41.) Between August 30, 2001, and September 4, 2001, Drucker sold 20,500 of the 41,200 shares in his American Express brokerage account. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶¶ 54-55; Drucker Aff. ¶ 46.) Drucker also sold 1,500 of Minerva's shares on August 31, 2001. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 56; Drucker Aff. ¶ 46.)

On October 18, 2001, Drucker proceeded to sell the remainder of his shares, 20,700 in his own account, and 5,000 in his father's account, between approximately 3:11 p.m. and 4:41 p.m. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶¶ 63-64; Compl. ¶ 28; Answer ¶ 28.) Drucker was unable to sell 200 shares that day due to a technical glitch, and he sold the final 200 the following morning, October 19, 2001. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 68.) Drucker also sold the remainder of Minerva's shares on October 18, 2001. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 67; Drucker Aff. ¶ 10; Compl. ¶ 35.)

On the afternoon of October 19, 2001, a research analyst from Solomon Smith Barney issued a note predicting that NBTY's fourth quarter earnings would fall below analysts' consensus estimates. (Compl. ¶ 37.) This resulted in a 20% decline in the price of NBTY shares. (Compl. ¶ 37.) At approximately 7:00 pm, NBTY issued an unplanned press release ("pre-release") announcing that it expected its 2001 fourth quarter earnings to be approximately 50% below analysts' consensus estimate. (Compl. ¶ 38.) On the next trading day, Monday, October 22, 2001, the stock price fell an additional 27%. (Compl. ¶ 40.)

The parties agree that at some time prior to the issuance of the October 19, 2001 pre-release, Kamil met with Drucker and Duban to go over drafts of the pre-release. The crux of their

3

dispute concerns the timing of this meeting in relation to Drucker's October 18 and 19, 2001 liquidation of his remaining NBTY stock. The SEC argues that Drucker came into possession of the information contained in the pre-release at a meeting on the afternoon of October 18, 2001, prior to the liquidation. (Compl. ¶ 27; Pl.'s Rule 56.1 Statement ¶ 35.) Defendants and Relief Defendant, on the other hand, contend that Drucker was first made aware of the contents of the pre-release at a meeting on the afternoon of October 19, 2001, which took place after the liquidation. (Defs.' and Relief Def.'s Rule 56.1 Statement ¶ 35.)

## II. Standard of Review

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986). The movant for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553); see also Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (citing Anderson, 477 U.S. at 248, 106 S. Ct. at 2510).

In deciding the motion, the court draws all reasonable inferences and resolves any

ambiguities in favor of the nonmoving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). An inference is not a suspicion or a guess, but is instead a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999). Indeed, an alleged or hypothetical factual dispute will not defeat the motion, and where the nonmoving party bears the burden of proof at trial, as the SEC does here, it is the SEC's burden to demonstrate that there are disputed issues that must be decided by a factfinder. See Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); see also Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2509-10. Summary judgment for the moving party is appropriate "where the nonmovant's evidence is merely colorable, conclusory, speculative, or not significantly probative." Travelers Ins. Co. v. Broadway W. St. Assocs., 164 F.R.D. 154, 160 (S.D.N.Y. 1995) (citing Anderson, 477 U.S. at 248, 106 S. Ct. at 2510).

In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996); see also United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994). Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Rule v. Brine, Inc., 84 F.3d 1002, 1011 (2d Cir. 1996).

### III.    Discussion

"Under the 'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis

of material, nonpublic information." United States v. O'Hagan, 521 U.S. 642, 651 (1997). There is no dispute that Drucker sold the securities in question the day before (Oct. 18) and the morning of the day of the damaging pre-release statement (Oct. 19). The sole basis of Defendants' and Relief Defendant's motion for summary judgment is Drucker's purportedly undisputed lack of knowledge of material non-public information prior to his October 18 and 19, 2001 trades in NBTY stock. (Reply 1.) The SEC proffers evidence tending to show that Drucker was exposed to the information contained in the pre-release on October 18, 2001, prior to the stock transactions in question. The Court must therefore determine "whether [the SEC's] evidence can reasonably and logically give rise to an inference of [knowledge of material, nonpublic information] under all of the circumstances." See Bickerstaff, 196 F.3d at 448. While there are numerous troubling aspects of the SEC's case and conduct, the Court cannot say that no reasonable juror could find in the SEC's favor.

The parties contest the implications of Duban's testimony concerning the timing of the meeting between Drucker, Duban, and Kamil, where Drucker was first made aware of the information contained in the pre-release. Defendants and Relief Defendant argue that Duban's testimony is so inconsistent that it must be summarily disregarded by the Court. (Mem. Supp. Mot. Summ. J. 24.) I disagree.

On May 23, 2002 during the initial SEC investigation, Duban testified as follows about the meeting between Drucker, Duban, and Kamil:

> Q   On Thursday [October 18, 2001] when you had the conversation in more detail about the pre-release or the possibility of doing a pre-release, is that the conversation where you believe you, Mr. Kamil and Mr. Drucker were in Mr. Kamil's office?
> A   I think so. I can't be certain, but it certainly seems that way to me. I can

6

> picture the scene. I was sitting in a chair near Mr. Kamil's window, there's a round conference table, and Mr. Drucker was sitting on the other side of the conference table and Mr. Kamil was behind his desk when Mr. Franzino [NBTY's controller] walked in. So I can picture that. I wish I could be certain of which day that was. I think it was Thursday, but I could be wrong, it could be Friday. I don't know.

(Dep. of Michael Duban 52:12-24. May 23, 2002.)

At the discovery stage, the SEC re-deposed Duban on October 24, 2006. At this later deposition, approximately five years removed from the incidents in question, Duban testified with more certainty than he did the first time, yet again appeared to be unclear as to what day the alleged meeting occurred, contradicting himself at times:

> Q   Okay. And prior to October 19th, was there a plan to issue a release of some sort prior to October 19th? In other words, was there a discussion prior to the Friday of October 19th?
> A   No. No.

(Dep. of Michael Duban 17:15-19, Oct. 24, 2006.)

> Q   At any time prior to October 19th, did Mr. Franzino stop by any meeting that you had with Mr. Kamil?
> A   Yes, he did.
> Q   And when was that?
> A   We had a meeting on the 18th which was Thursday, and Mr. Franzino stopped in at the meeting. He had to give Mr. Kamil something.
> Q   Okay. And you said you had a meeting on Thursday, October 18th. Who else was at that meeting?
> A   Harvey Kamil, Mitchell Drucker, and myself.
> Q   And what was the purpose of that meeting?
> A   To discuss a release.

(Dep. of Michael Duban 19:2-14, Oct. 24, 2006.)

> Q   When was the decision made to issue a press release on October 19th?
> A   The decision was made on Thursday.

(Dep. of Michael Duban 21:4-7, Oct. 24, 2006.)

7

Defense counsel alleges that this newfound certainty about the alleged October 18, 2001 meeting was a result of tampering by SEC counsel. (Eichinger Aff. ¶¶ 17-22; Mem. Supp. Mot. Summ. J. 22.) This Court is not in a position to judge the credibility of witnesses when entertaining a motion for summary judgment. The weight of Duban's testimony must be considered by a jury, and it is not immediately apparent that the later testimony is so different from the first that no reasonable juror could possibly find in favor of the SEC. A juror could reasonably conclude that, upon further reflection, Duban became more confident that the events in question happened on October 18, 2001 and not on October 19. While Defendants and Relief Defendant can produce conflicting testimony from numerous other witnesses, the fact that there is conflicting testimony is not a basis for striking Duban's testimony. Instead, it indicates a genuine question of material fact for the jury.

Defendants and Relief Defendant offer Jeffreys, supra, to support their contention that summary judgment is proper at this time because Duban's testimony is "replete with inconsistencies, improbability and obvious lies," and "[n]o reasonable jury could believe this new testimony." (Mem. Supp. Mot. Summ. J. 6.) Jeffreys was a section 1983 case in which the plaintiff alleged that police officers threw him out of a third story window, although the plaintiff had stated numerous times immediately after the incident that he had jumped, directly contradicting the allegations in the complaint. Jeffreys, 426 F.3d at 551-52.

The Jeffreys panel noted, "If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was *ambiguous, confusing, or simply incomplete*." Jeffreys, 426 F.3d at 555 n.2 (citing Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d

8

106, 112 (2d Cir. 1998)). In this case, Duban's earlier testimony was arguably ambiguous or incomplete with respect to the exact day when the meeting occurred. His later testimony was more precise and confident, albeit inconsistent at times. While such a radical change in deposition testimony during the years between the two depositions may not be particularly credible, a jury is free to believe or disbelieve any of the witnesses brought before it. See, e.g., Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 325 (2d Cir. 1986) ("[T]he jury [is] entitled to believe parts and disbelieve parts of the testimony of any given witness . . . ."). The differences between the two depositions are not so great that a reasonable juror could not infer that the meeting took place at the earlier time. Nor does Duban's admission that he did not like Drucker and thought him to be immature foreclose such a reasonable inference. (See Dep. of Michael Duban 195:3-96:6, Oct. 24, 2006.)

In Jeffreys, the plaintiff relied almost exclusively on his own contradictory and incomplete testimony, and the defendants met the difficult burden of demonstrating that there was no corroborating evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor. Jeffreys, 426 F.3d at 554-55. That is not the case here. The SEC proffers, inter alia, testimony from Joseph Franzino concerning the timing of when insiders were made aware of the earnings shortfall and placing Drucker at a meeting with Kamil and Duban, affidavits from Solomon Smith Barney bankers concerning an earnings-related conference call, phone records from those Solomon Smith Barney bankers, and numerous other pieces of circumstantial evidence. The SEC argues that this and other evidence could allow a reasonable jury to infer Drucker's knowledge of the missed earnings prior to October 19, 2001. As this Court is not in a position to weigh the strength or persuasiveness of the evidence, and Defendants

9

and Relief Defendant do not argue that these other pieces of evidence should be stricken, the Court must conclude that there is sufficient corroborating evidence to create a genuine issue of material fact for the jury. Accordingly, it would be improper for me to invade the province of the jury and disregard Duban's testimony.

The SEC has addressed many other elements beyond possession of inside information in their opposition to the motion for summary judgment, such as Drucker's insider status, the materiality of the EPS shortfall, Drucker's scienter, elements of Ronald Drucker's culpability, Minerva's culpability, and inferences derivable from the invocation of Fifth Amendment privileges. Because I have ruled in the SEC's favor on the Duban issue, there is no need for me to consider any of these issues.

## V.  Conclusion

For the forgoing reasons, Defendants' and Relief Defendant's motion for summary judgment is denied. This case is scheduled for trial on November 26, 2007. A joint pretrial order, together with proposed voir dire, jury instructions, and a complete set of exhibits, must be filed with the court by August 3, 2007. *In limine* motions are due September 14, 2007. Response to *in limine* motions are due September 28, 2007. No replies are accepted. The court will hold a final pretrial conference on November 16, 2007 at 1 p.m., at which time the court will rule on all *in limine* motions and on all objections to exhibits. No objection not made in the pretrial order and ruled on at the final pretrial conference shall be preserved for trial.

This constitutes the decision and order of the Court.

Dated: July 12, 2007

                                                 U.S.D.J.

BY FAX TO ALL COUNSEL